**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JILL MANNING, THERESA BRYANT, SUSAN SNYDER, DIANE ELLIOTT, individually and for the benefit of others, | |
| *Plaintiffs*, | Case No. |
| v. | |
| CREATIVE HEADQUARTERS, LLC, d/b/a Bidsticks.com, a California Limited Liability Corp.; UPBIDS.COM LLC ; BIDSAUCE, LLC, a foreign corporation; VESUVIUS TECHNOLOGIES, LLC, a Wisconsin corp., d/b/a ScoreIt!; NAXOPRESENCE UK LTD, d/b/a BidFun.com, a UK Ltd; BIDRIVALS LTD. a Malta Ltd. and BIDRIVALS, INC., a Delaware  corp.; JOHN DOES 1-40, | JURY DEMAND |
| *Defendants*. | |

**COMPLAINT**

1.      Plaintiffs Jill Manning, Theresa Bryant, Susan Snyder and Diane Elliott through their counsel, upon personal knowledge as to their own acts and beliefs, and upon information and belief as to all matters based upon investigation of counsel, alleges as follows:

### I.      JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C §1332 because there is diversity of citizenship and the amount of controversy, exclusive of interest and costs, exceeds the sum or value of $75,000 against each Defendant.

3.      All Defendants are foreign corporations whose principal places of business are outside the state of Illinois and there is complete diversity of citizenship between the parties.

4.      Theresa Bryant is a citizen and resident of Kane County, Illinois. All Defendants transact business by means of the Internet throughout the state of Illinois.

5.      The Court has general jurisdiction over Defendants.

6.      The venue is proper in the Northern District of Illinois because Defendants are subject to personal jurisdiction in Illinois since they all advertise and conduct business in Illinois through the internet. In addition, portions of the gambling violations described herein were conducted in and governed by the laws of Illinois.

7.      Plaintiffs did not enter into any contracts with Defendants and any purported contractual language on defendant's websites regarding jurisdiction, venue, forum non conveniens or choice of law, or any other matters are void. 720 ILCS 5/28-7, etc.

8.      Joinder of Defendants is proper since the illegal conduct complained of is identical for each Defendant, judicial economy would be served and the risk of inconsistent rulings avoided.

**A. PARTIES**

**Defendants**

9.      CREATIVE HEADQUARTERS, LLC, d/b/a Bidsticks.com, is a California Limited Liability Corp. with its principal place of business in California.

10.     UPBIDS.COM LLC doing business as UpBids.com is a California Limited Liability Corp., whose principal place of business is California.

11.     BIDSAUCE LLP is a foreign limited liability partnership.

12.     VESUVIUS TECHNOLOGIES, LLC is a Wisconsin corporation doing business as ScoreIt!

13.     NAXOPRESENCE UK LTD is a UK LTD doing business as BidFun.com.

2

14.     BIDRIVALS Ltd is a Malta Ltd. BIDRIVALS, Inc. is a Delaware corporation with its principal place of business in New York.

15.     John Does 1-40 include all owners, officers, directors, investors or promoters of named Defendants' illegal gambling operations, including any persons who received any transfer of gambling funds from John Does 1-40. These persons and entities will be identified through discovery and added to the complaint.

16.     Defendants conduct their illegal internet gambling businesses in all 50 states including the states of Illinois, Massachusetts, Georgia, Ohio, New Jersey, South Carolina and Kentucky.

**Plaintiffs**

17.     Plaintiff Theresa Bryant is a resident of Illinois. Plaintiff Bryant pledges, from her share of any individual recovery from this lawsuit, to donate 1/8 of such recovery to the State of Illinois General Fund and 1/8 to Misericordia, a non-profit charitable organization.

18.     Plaintiff Jill Manning is a resident of Massachusetts. Plaintiff Manning pledges, from her share of any individual recovery from this lawsuit, to donate 1/8 of such recovery to the State of Massachusetts General Fund and 1/8 to Cancer for College, a non-profit charitable organization.

19.     Plaintiff Susan Snyder is a resident of the State of Georgia. Plaintiff Snyder pledges, from her share of any individual recovery from this lawsuit, to donate 1/2 of such recovery to the educational fund of the county in which she resides, Fulton County Georgia.

20.     Plaintiff Diane Elliott is a resident of Washington. Plaintiff Elliot pledges, from her share of any individual recovery from this lawsuit, to donate 1/8 of such recovery to the State

of Ohio General Fund, 1/8 to the State of New Jersey General Fund and 1/8 to Cancer for College, a non-profit charitable organizations.

## I.    INTRODUCTION

21.    This action alleges that Defendants operate illegal Internet gambling websites, by permitting persons to play games of chance or skill for money or other things of value and make wagers upon the result of a game or contest. All fifty states prohibit games of chance that require consideration be paid for the chance to win prizes or things of value. In contrast, eBay is not a gambling website because they do not charge consideration for the chance to win.

22.    Defendants operate what is known as "penny auction" websites. Penny auctions first began operation in Europe in 2005 by Entertainment Shopping, AG. In 2008, Entertainment Shopping, Inc., began conducting business in the United States under the name of Swoopo.com. Each of the Defendants copied Entertainment Shopping's business model and they have almost identical rules and website designs.

23.    The basic features of Defendants penny auctions are that Defendants provide the prizes (merchandise) and players must pay an entry fee and a bidding fee (consideration) for each chance to win merchandise. The entry fees are called "bid packs" and they range in price from $20 to more than $500. The bidding fee is $.60 to one dollar for each bid, depending on the Defendants' rules. Payment of the bidding fee entitles the player the chance to bid to win prizes. All failed bids are revenue to Defendants. The winner of the auction is the last bidder before time runs out. Unlike a normal auction, each bid only increases the price of the merchandise by a penny, hence the name "penny auction". Each auction usually starts at $.00 and 15 to 30 seconds is added to the clock with each bid.

24.     Each time a player bids they are paying money to play a game of chance with Defendants on whether someone else will bid after them. Defendants make their money by charging the entry fee and retaining the money from each failed bid. Defendants' auctions are illegal gambling because, among other things, they charge consideration for a chance to win a prize and they are wagering with the players by taking the opposite side of each bet.

25.     Defendants conduct of charging consideration for the chance to win prizes and their conduct of bookmaking, wagering and betting, violates all 50 state laws prohibiting unauthorized gambling and lotteries. For example, the Illinois statute states: A person commits gambling when he: Knowingly establishes, maintains, or operates an Internet site that permits a person to play a game of <u>chance or skill</u> for money or other thing of value by means of the Internet or to make a wager upon the result of any game, contest[.] 720 ILCS 5/28-1(a)(12).

26.     For purposes of this lawsuit, the particular laws prohibiting gambling and lotteries that Plaintiffs allege Defendants violate are described in: Illinois criminal statutes, 720 ILCS 5/28, *et. seq.;* Massachusetts General Laws Chapter 271, *et. seq.;* Georgia Criminal Code, § 16-12 *et. seq.;* Ohio Revised Code Chapter 2915 *et. seq.,* New Jersey Code of Criminal Justice Chapter 37, *et. seq.;*South Carolina Code Ann. § 16-19 *et seq*., and Kentucky Rev. Stat. § 528 *et seq.*

27.     Plaintiffs seek recovery from Defendants for the gambling losses of other players pursuant to Illinois Code 720 ILCS 5/28-8(b), Georgia Code § 13-8-3; Massachusetts General Laws Chapter 137 § 1; Ohio Revised Code § 3763.04, § 3763.08, New Jersey Criminal Law 2A:40-6, South Carolina Code Ann. §  32-1-20, South Carolina Code Ann. § 16-19-20 and Kentucky Rev. Stat. § 372.040. These statutes allow losers to recover their gambling losses from

the winners, and if the losers fail to make a claim within six months, any other person can recover those losses.

## II.        FACTS COMMON TO ALL DEFENDANTS

28.        Defendants charge consideration to play a game of chance to win discounted prizes such as televisions, laptops, electronics, household items and gift cards. The websites are open for business 24 hours a day in all 50 states. Defendants conduct their penny auction businesses for profit and they do not have any state or federal authorization or exemptions that allow them to organize, promote and operate their internet gambling websites.

29.        Unlike normal auctions, where there are no bidding fees, Defendants charge an a bidding fee (consideration) for each chance to win a prize. Because the outcome of any particular bid or any particular auction is uncertain and beyond the control of any specific participant, Defendants auction scheme involves "chance" in violation Illinois criminal statute, 720 ILCS 5/28, *et. seq.;* Massachusetts General Laws Chapter 271, *et. seq.;* Georgia Criminal Code, § 16-12 *et. seq.;* Ohio Revised Code Chapter 2915 *et. seq*., New Jersey Code of Criminal Justice Chapter 37, *et. seq.;* South Carolina Code Ann. § 16-19 *et seq.,* and Kentucky Rev. Stat. § 528 *et seq.*

30.        Players pay Defendants $0.60 to $1.00 (hereinafter rounded to $.75) for each bid for the chance to be the last player to bid when time runs out and win a prize. Each $0.75 bid raises the price by only a penny or a few cents. All failed bids are lost to Defendants.  If a player bids 200 times he or she loses $150.00 (200 x $.75). Unlike a normal auction, the winner of Defendants "auction" is the *last player to bid before time runs out.*

31.        The Merchandise price usually starts at $0.00. A countdown timer adds 3-30 seconds (normally 15 seconds) with each new bid. So while an eBay auction with two minutes

left will end in exactly 120 seconds, a penny auction with 15 seconds left could go on for several hours or even days. There can be tens to hundreds of bidders and bidding can be rapid and frenzied because each player is chancing the elusive goal of being the last to bid, in order to win the merchandise.

32.

**A Bet or Wager on the Outcome of a Game of Chance**

33.     Each bid is a bet or wager with Defendants that no one else will bid after them. Defendants win the $.75 bet if another player bids. The player wins the bet if no other player bids. Each bid is a bet or wager between the player and Defendants upon the result of a game of "chance" of whether another player will bid. The outcome of each bid is uncertain and beyond the control of any specific player.

34.     If a subsequent bid is placed the previous player loses and the Defendants are the winners of that bet. This resets the timer and a new game of chance begins between a player and Defendants over whether another player will bid. Each player must then decide if they want to risk (chance) another $.75 for a new 15 second chance to win. The game of chance goes on and on, until finally time runs out when no other player wagers $.75 with Defendants for a chance to win.

35.     Defendants' "auctions" are illegal gambling contracts (illegal wagers) supported by "gambling consideration." The terms of the illegal gambling contract are that, in exchange for mutual consideration, $.075 from the player and the promise of a prize from Defendants, the player and Defendants stipulate that with each bid (bet), they shall gain or lose based upon the outcome of a future contingent event (chance). The outcome, that the parties agree determines the winner and loser, is whether another player places a subsequent bid. If another player places

a subsequent bid, the player loses and Defendants are the winners of that $.75 bet or wager. If no other player places a bid, the Defendants lose and must produce the prize to the player. With each bid, either the player or Defendants are certain to lose. With each bid (bet) the gambling consideration "hangs in the balance". With each bid, each party has a chance of gain and takes a risk (chance) of loss.

36.     Defendants' illegal gambling wagers are no different than casino wagers placed on roulette wheels, craps, slot machines, keno, or other games of change. With each spin of the wheel, throw of the dice, pull of a lever or drawing, either the player wins or the casino wins. Each has a chance of gain and each takes a risk of loss.

37.      In Defendants' "auctions", each bid is a bet or wager between the Defendants and the player. In gambling terminology, the Defendants take the other side of each bet and Defendants are participants in the contest. Defendants' game of chance merely substitutes the chance created by a wheel, dice, cards or drawing, for the chance created by other gamblers' willingness to risk small sums of money for the chance to win something of value. Defendants readily take the other side of the bet, since the odds are decidedly in their favor that on any bet, another player will risk a small sum for a chance to win. (See example of winning prize below). Defendants' "auctions" prey on the addictiveness of gambling and players' willingness to risk small sums for the chance to win a prize.

## Payment of Consideration for the *Chance* to Win a Prize

38.     The element of *chance* is always involved in winning Defendants' auctions.

39.     <u>Black's Law Dictionary</u> defines *chance* as: *Absence of … controllable causation*; accident; *fortuity; hazard; … risk*... The <u>opposite</u> of *intention, design or contrivance*. [Fifth Edition]. (emphasis added).

8

40.     The element of chance always exists because another player can always bid. Whether another player places a subsequent bid is completely out of one's *control* and it is *fortuitous*.

41.     With each bid both the player and the Defendants *risk* or *hazard* losing.

42.     Chance exists because regardless of the players "*intention, design or contrivance*" the player has no control over whether another player bids.

43.     Chance exists because it is <u>unpredictable</u> whether another player will bid.

44.     Chance exists because no one can <u>control or predict</u> the *intentions, design or contrivance* of other players.

45.     It does not matter <u>how many times</u> a player bids, since each bid is a separate chance to win or lose, and a separate violation of the gambling statutes.

46.      It does not matter <u>when</u> in the auction a player bids (timing of the bid), since each bid is a separate chance to win or lose, and a separate violation of the gambling statutes. Whether someone else bids is out of the players *control* and *influence*.

47.     It does not matter at <u>what price</u> a player bids, because whether someone else bids is out of one's *control* and is *fortuitous*.

48.     <u>Repeated bidding</u> is irrelevant to the issue of whether the parties engage in illegal gambling, since each bid represents a separate and new chance to win or lose, (a separate gambling violation), just like each roll of dice, spin of a roulette wheel or feed of a slot machine.

49.     The fact that a player makes decisions regarding: (i) whether to bid; (ii) at what price to bid; (iii) how many times to bid; and (iv) when to bid, does not change the fact that each bid is a separate and distinct gambling violation, because each bid involves the payment of

consideration for the chance to win merchandise; and each bid is a wager between the player and Defendants over the outcome of that bid.

50.     Defendants may profess that the <u>ultimate outcome</u> of the auction is determined by the deliberate decisions, skills or strategies of the auction participants, or that a determined or persistent player can always win; but this does not change the fact that <u>each bid</u> is a game of chance (just like each roll of dice, spin of a roulette wheel, feed of a slot machine, etc). If another player bids, Defendant win. If no other player bids, the player wins. With each bid, winning or losing hangs in the balance.

51.     Defendants' auctions are a game of chance like an internet slot machine where the players feed $.75 into a virtual machine for the chance to win a prize. Each $.75 feed represents a separate chance to win and a separate gambling violation.

52.     If Defendants' auctions are not a *game of chance* (no chance that another player will bid; no chance of losing), each bid would be a winning bid and Defendants would have to deliver the merchandise for each $.75 bid. Instead, the winner is the player who by *chance*, is lucky to be the last to bid.

53.     Defendants engage in illegal gambling because they charge consideration for the opportunity to bid and they distribute prize based upon an element of chance.

54.      Each bid is a separate and distinct gambling violation because each bid involves the payment of consideration for the chance to win a prize and each bid is a wager between the player and Defendants over the result. An element of chance always exists in Defendants auctions, because no one can predict or control whether other players will bid. Each new bid resets the clock for the outcome of a new game of chance. The gambling violations are repeated with each bid.

### Conducting a Lottery

55.     "Lottery" means any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win such prize, whether such scheme or procedure is called a pool, lottery, raffle, gift, gift enterprise, sale, policy game, or by some other name. In Defendants' auctions the outcome is determined by "chance" because the player does not have control over the outcome (whether other players will bid) and does not know whether another player will bid. Therefore, the ultimate winner of Defendants' auctions are determined by chance.

56.     An example of one of Defendants' auctions for an iPad 3G 64GB, which retails for $829.00 at an Apple Store, was won for a final price of $227.91. This means that players bet 22,791 times on the chance that their bet would be the final $.75 bet. The revenues for iPad were $17,093.25 (22,791 x $.75). In this contest, Defendant's chance of winning each bet turned out to be thousands of times greater than the odds of a player winning each bet.

57.     What makes Defendants auctions work is the tendency of players to think of the bids that they have already put in as a "sunk cost" – money that they have already put toward buying the item. This is an illusion. The fact that a player has already bid 200 times does not mean that their chance of winning on the 201st bid is any higher than it was at the very beginning. A new bidder can come along at any time and, at the cost of a mere $.75, jump into the auction in which a player has already spent more than $150.00. The money the player put in has gotten him no closer to winning the prize than a bunch of turns at a slot machine or a bunch of losing raffle tickets. Other gambling psychology is also at play, including "anchoring" and "loss aversion".

58.     Defendants' internet "auctions" are unregulated gambling websites that have all of the public interest risks associated with other forms of gambling. Internet gambling introduces new ways to exacerbate these threats to health, welfare, safety, and morals. Gambling addicts and underage gamblers have greater accessibility to on-line gambling -- able to gamble from their homes immediately and on demand, at any time, on any day, unhindered by in-person regulatory measures. Concerns over ties to organized crime and money laundering are exacerbated where on-line gambling operations are not physically present in-state to be inspected for regulatory compliance. In addition, Defendants cannot guarantee a fair chance to win, since Defendants do not and cannot adequately protect players from other players cheating by colluding with other players, using "bots," automated programs, scripts, multiple computers with different login id's, multiple email addresses  or otherwise unfairly manipulating auctions.

59.     In addition, Defendants' "auctions" are rigged against the players. Defendants promote the use of computer scripts that allow players to set, in advance, computer codes that automatically place bids when the timer reaches 30 seconds or below. This means that all previous bids placed before the 30 second reset, were guaranteed losing bids prior to being placed. Defendants know that these bids are losing bids before they are placed, but they continue with the fraud anyway. This is no different than a casino using rigged dice, cards or machines. Penny auctions can also be rigged by players colluding, using multiple computers, multiple IP addresses, using computer bots and by other fraudulent means. State legislatures have a legitimate interest in outlawing gambling activities and depriving the gambling operations of their illegal winnings. Defendants' unregulated "auctions" are illegal gambling activities under the laws of all 50 states and in particular the states of Illinois, Massachusetts, Georgia, Ohio New Jersey, South Carolina and Kentucky.

### III.    CAUSE OF ACTIONS

### COUNT I — VIOLATION OF ILLINOIS LAW — THERESA BRYANT

60.    Plaintiffs incorporate the foregoing allegations as fully set forth herein.

61.    Plaintiff Theresa Bryant seeks recovery, individually and for the benefit of State of Illinois General Fund and Misericordia, from Defendants for gambling losses of players pursuant to 720 ILCS 5/28-8(b) of the Criminal Code of 1961.

62.     720 ILCS 5/28-8(b) provides that any person who loses money or any other thing of value through illegal gambling may recover what was lost from the winner. 720 ILCS 5/28-8(a) (1998). If the gambler does not bring a suit to recover his or her losses within six months of the time they occur, any other individual may bring a civil suit for damages triple the amount lost by the gambler. 720 ILCS 5/28-8(b).

63.    Players from the state of Illinois lost money to Defendants as a result of Defendants' illegal gambling activities.

64.    Defendants are the winners of all failed chances to win on their website, since they retain the revenue from all lost bids. Defendants are also the winners of all unused bids.

65.    Pursuant to 720 ILCS 5/28-8(b) Plaintiff and her beneficiaries are entitled to recover all players' losses from Defendants.

66.    Defendants maintain accurate computer records of all of their winnings and the names, addresses and amount of losses of all players is easily ascertainable through discovery. The statute does not require that the names of the losers or the amount of their loses be pled in the complaint. This information is easily ascertainable through discovery and is easily proven at trial.

67. The legislative purpose for 720 ILCS 5/28-8 (b) is to deter gambling by depriving the gambling establishments of their illegal winnings. By this lawsuit, Plaintiff seeks to fulfill that legislative purpose and to provide a benefit to the state and a worthwhile charity.

68. Players of Defendants internet auctions lost money from the time that Defendants first began conducting their internet auctions with United State citizens to the present.

69. Plaintiff and her beneficiaries seek recovery for the time period six years prior to the filing of this lawsuit, or from the time period when Defendants first began conducting their internet auctions with United State citizens, whichever is earlier; up to and including six months prior to the final judgment, final settlement or final appeal of this lawsuit.

**Illinois Gambling Laws**

70. It is illegal to set up, operate or promote any lottery or policy game. It is illegal to operate an Internet website that permits a person to play a game of chance or skill for money or other thing of value by means of the Internet or to make a wager upon the result of any game or contest. It is illegal to own or operate any gambling device. It is illegal to maintain gambling books and records and it is illegal to transmit gambling information. It is also illegal to possess any money, which has been received in the course of a bet or wager. 720 ILCS 5/28, *et. seq.*

71. Defendants violated all of these laws because they charge money to players for the chance to win things of value and they allow a player to make a wager upon the result of a game or contest.

72. Defendants operate Internet websites that permits a person to play a game of chance or skill for merchandise (things of value). This is an express violation of 720 ILCS 5/28-1(a)(12).

73.     Every bid is a bet or wager with Defendants upon the result of a game or contest of whether another player will bid after them. This is an express violation of 720 ILCS 5/28-1(a)(12).

74.     Defendants knowingly, set-up and promote their illegal pool and lottery in violation of 720 ILCS 5/28-1(a)(6) and (7).

**Illegal Gambling Activities**

75.     Plaintiff and her beneficiaries are entitled to recover money losses from Defendants because Defendants are the winners form their illegal gambling activities in violations of 720 ILCS 5/28-1(a) as follows:

720 ILCS 5/28-1(a)(emphasis added):     A person commits gambling when he:

(3) **Operates, keeps, owns, uses,** purchases, exhibits, rents, sells, bargains for the sale or lease of, manufactures or distributes **any gambling device**; or

(5) Knowingly **owns or possesses any book, instrument or apparatus** by means of **which bets or wagers have been, or are, recorded or registered**, or knowingly **possesses any money which he has received in the course of a bet or wager**; or

(6) **Sells pools upon the result of any game or contest of skill or chance**, political nomination, appointment or election; or

(7) **Sets up or promotes any lottery or sells, offers to sell or transfers any ticket or share for any lottery**; or

(8) **Sets up or promotes any policy game** or sells, offers to sell or knowingly **possesses** or transfers any **policy ticket**, slip, **record, document** or other similar device; or

15

(9) Knowingly drafts, prints or **publishes any lottery ticket** or share, or any policy ticket, slip, record, document or similar device, except for such activity related to lotteries, bingo games and raffles authorized by and conducted in accordance with the laws of Illinois or any other state or foreign government; or

(10) Knowingly **advertises any lottery or policy game**, except for such activity related to lotteries, bingo games and raffles authorized by and conducted in accordance with the laws of Illinois or any other state; or

(11) Knowingly **transmits information as to wagers,** betting odds, or changes in betting odds by telephone, telegraph, radio, semaphore or similar means; or knowingly **installs or maintains equipment for the transmission or receipt of such information**; except that nothing in this subdivision (11) prohibits transmission or receipt of such information for use in news reporting of sporting events or contests; or

(12) Knowingly **establishes, maintains, or operates an Internet site that permits a person to play a game of chance or skill for money or other thing of value by means of the Internet or to make a wager upon the result of any game, contest**, political nomination, appointment, or election by means of the Internet.

76. Defendants knowingly violated all of the above Illinois criminal statutes against gambling. Defendants knowingly established, maintain, or operate an Internet site that permits persons to play a game of chance or skill for money or other thing of value by means of the Internet or to make a wager upon the result of any game, contest. Defendants engaged in gambling, possessed and operated gambling devices (their Internet websites), engaged in bookmaking, conducted an illegal lottery, pool or policy and promoted gambling and possessed gambling records all in violation of Illinois criminal statutes.

16

77.     Pursuant to 720 ILCS 5/28-8(b), Defendants are the winners of all lost bids, lotteries, bets or wagers and are liable to Plaintiff and her beneficiaries for all of the losses incurred by players on their website.

**PRAYER FOR RELIEF — THERESA BRYANT AND BENEFICIARIES**

WHEREFORE, Plaintiff Theresa Bryant, individually and for the benefit of State of Illinois General Fund and Misericordia, prays that the Court enter an order and judgment in their favor and against Defendants as follows:

(a) Declaring Defendants guilty of illegal gambling;

(b) Declaring that Plaintiff and her beneficiaries are entitled to recover the losses of players from Defendants' Internet websites pursuant to 720 ILCS 5/28-8 (b) of the Criminal Code of 1961;

(c) Awarding actual damages to Plaintiff and her beneficiaries in the amount of the losses of all players from Defendants' Internet website in an amount to be determined at trial;

(d) Award triple the amount of damages determined by the Court or Jury for the losses;

(e) Awarding Plaintiff and her beneficiaries reasonable costs and attorneys' fees;

(f) Awarding Plaintiff and her beneficiaries pre- and post-judgment interest; and

(g)  Granting such other and further relief as the Court deems equitable and just.

**COUNT II — VIOLATION OF MASSACHUSETTS LAW — JILL MANNING**

78.     Plaintiffs incorporate the foregoing allegations as fully set forth herein.

79.     Plaintiff Jill Manning seeks recovery, individually and for the benefit of State of Massachusetts General Fund and Cancer for College, from Defendants for gambling losses of players pursuant to Massachusetts General Laws Chapter 137: Section 1.

17

80.     Chapter 137: Section 1, Recovery of Money or Goods Lost at Gaming, provides that any person who loses money or any other thing of value through illegal lotteries, gaming, betting, policy or pool ticket or in consideration of a chance of drawing or obtaining a prize or other thing of value in a lottery or policy game, pool or combination, or other bet may recover such money in contract  from the winner. If the gambler does not bring a suit to recover his or her losses within three months of the time they occur, any other individual may bring a civil suit for damages treble the value of the amount lost.

81.     Players from the state of Massachusetts lost money to Defendants as a result of Defendants' illegal gambling activities.

82.     Defendants are the winners of all failed chances to win on their website, since they retain the revenue from all failed bids.

83.     Defendants maintain accurate computer records of all of their winnings and the names, addresses and amount of losses of all players is easily ascertainable through discovery. The statute does not require the Plaintiff to plead in the complaint the names of the losers or the amount of their loses. This information is easily ascertainable through discovery and is easily proven at trial.

84.     The legislative purpose for Chapter 137: Section 1 is to deter gambling by depriving the gambling establishments of their winnings. By this lawsuit, Plaintiff Jill Manning seeks to fulfill that legislative purpose and to provide a benefit to the state and a worthwhile charity.

85.     Players of Defendants internet auctions lost money from the time that Defendants first began conducting their internet auctions with United State citizens to the present.

18

86.     Plaintiff seeks recovery for the time period six years prior to the filing of this lawsuit, or from the time period when Defendants first began conducting their internet auctions with United State citizens, whichever is earlier; up to and including three months prior to the final judgment, final settlement or final appeal of this lawsuit.

**Massachusetts Gambling Laws**

87.     It is illegal to set up, operate or promote any lottery or policy game. It is illegal to own or operate any gambling device. It is illegal to offer and dispose of property of value with intent to make the disposal thereof dependent upon or connected with chance, lot, game, hazard or other gambling device whereby such chance or device is made an additional inducement to the disposal or sale of said property. It is illegal to maintain gambling books and records and it is illegal to transmit gambling information. It is also illegal to possess any money, which has been received in the course of a bet or wager. Chapter 271: Section 5A, Section 7, Section 7A, Section 9, Section 11, Section 13, Section 15, Section 16 Section 16A, Section 18 and Section 19.

88.     Defendants violated all of these laws because they charge money to players for the chance to win things of value and they allow a player to make a wager upon the result of a game or contest of whether another player will bid after them.

89.      Defendants charge an entry fee and a bidding fee for each chance to win a prize. This is an express violation of. Chapter 271 *et. seq.*

90.     Every bid is a bet or wager between the Defendant and the player upon the result of a game or contest of whether another player will bid after them. This is an express violation of Chapter 271, *et. seq.*

**Illegal Gambling Activities**

91.     Plaintiff and her beneficiaries are entitled to recover money losses from Defendants because Defendants are the winners from their illegal gambling activities in violations of Chapter 271, *et. seq.* as follows:

**Section 7.**     Whoever sets up or promotes a lottery for money or other property of value, or by way of lottery disposes of any property of value, or under the pretext of a sale, gift or delivery of other property or of any right, privilege or thing whatever disposes of or offers or attempts to dispose of any property, with intent to make the disposal thereof dependent upon or connected with chance by lot, dice, numbers, game, hazard or other gambling device, whereby such chance or device is made an additional inducement to the disposal or sale of said property[…].

92.     Defendants setup and promote a lottery for property of value and by way of lottery disposes of property of value, in violation of Section 7.

93.     Defendants offer and dispose of property of value with intent to make the disposal thereof dependent upon or connected with chance lot, game, hazard or other gambling device whereby such chance or device is made an additional inducement to the disposal or sale of said property, in violation of Section 7.

94.     Defendants' "auctions" are illegal gambling contracts (illegal wagers) supported by "gambling consideration." The terms of the illegal gambling contract are that, in exchange for mutual consideration of $.075 and the chance to win a prize, the Defendants and the player stipulate that with each bid (bet), they shall gain or lose based upon the outcome of a future contingent event (chance). The outcome, that the parties agree determines the winner and loser, is whether another player places a subsequent bid. If another player places a subsequent bid, the

player loses and Defendants are the winners of that bet or wager. If no other player places a bid, the Defendants lose and must produce the prize (merchandise) to the player. With each bid, either the player or Defendants are certain to lose. With each bid (bet) the gambling consideration "hangs in the balance". Each party has a chance of gain and takes a risk of loss.

**Section 7A.**    In this section the following words shall have the following meanings:

"**Raffle**", an arrangement for raising money by the sale of tickets, certain among which, as determined by chance after the sale, entitle the holders to prizes. […]

95.    Defendants do not have the proper authorization under Section 7A to conduct raffles in Massachusetts.

96.    Defendants violate the law against raffles because each bid sold to a player is determined by chance after the sale as to whether the player is entitled to a prize.

**Section 16A**.  Whoever knowingly organizes, supervises, manages or finances at least four persons so that such persons may provide facilities or services or assist in the provision of facilities or services for the conduct of illegal lotteries, or for the illegal registration of bets or the illegal buying or selling of pools upon the result of a trial or contest of skill, speed or endurance of man, beast, bird or machine, or upon the happening of any event, or upon the result of a game, competition, political nomination, appointment or election, or whoever knowingly receives from at least four such persons  compensation or payment in any form as a return from such lotteries, such registration or such buying or selling.

97.    Defendants knowingly violate Section 16A because they organize, supervise and manage more than four persons who provide services for the conduct of illegal lotteries and registration of bets and for the illegal selling of pools upon the result of the happening of an event, game or competition. Defendants also knowingly receive from at least four such persons

21

compensation or payment as a return from such lotteries, illegal registration of bets and the selling of pools upon the result of the happening of an event, game or competition in violation of Section 16A.

**Section 18**. Whoever keeps, sets up, promotes or is concerned as owner, … in managing a policy lottery or policy shop, … purporting or designed to guarantee or assure to a person, or to entitle him to a chance of drawing or obtaining a prize or thing of value in a lottery or in the game or device commonly known as policy lottery or policy, whether drawn or determined, or remaining to be drawn or determined, or who receives from a person any money or other thing of value for such article or chance; … shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than one year.

98.     Defendants knowingly violate Section 18, because they set up and own a policy lottery or policy shop and because they receive money for such article or chance.

99.     Defendants knowingly violated all of the above Massachusetts criminal statutes against gambling. Defendants engaged in gambling, possessed and operated gambling devices, engaged in bookmaking, conducted illegal lotteries or policy, promoted gambling and possessed gambling records in violation of Massachusetts criminal statutes.

100.     Pursuant to Chapter 137: Section 1, Defendants are the winners of all failed bids, lotteries, bets or wagers and are liable to Plaintiff and her beneficiaries for all of the losses incurred by players on their website.

### PRAYER FOR RELIEF — JILL MANNING AND BENEFICIARIES

WHEREFORE, Plaintiff Jill Manning, individually and for the benefit of State of Massachusetts  General Fund and Cancer for College, prays that the Court enter an order and judgment in their favor and against Defendants as follows:

(h) Declaring Defendants guilty of illegal gambling;

(i) Declaring that Plaintiff and her beneficiaries are entitled to recover the losses of players from Defendants' Internet websites pursuant to Chapter 137: Section 1;

(j) Awarding actual damages to Plaintiff and her beneficiaries in the amount of the losses of all players from Defendants' Internet website in an amount to be determined at trial;

(k) Award triple the amount of damages determined by the Court or Jury for the losses;

(l) Awarding Plaintiff and her beneficiaries reasonable costs and attorneys' fees;

(m) Awarding Plaintiff and her beneficiaries pre- and post-judgment interest; and

(n) Granting such other and further relief as the Court deems equitable and just.

## COUNT III — VIOLATION OF GEORGIA LAW — SUSAN SNYDER

101.    Plaintiffs incorporate the foregoing allegations as fully set forth herein.

102.    Plaintiff Susan Snyder seeks recovery, individually and for the benefit of the educational fund of Fulton County, Georgia, from Defendants, for gambling losses of players pursuant to Georgia Code § 13-8-3(b).

103.    Code § 13-8-3(b) provides that money paid or property delivered upon a gambling consideration may be recovered from the winner by the loser by institution of an action for the same within six months after the loss and, after the expiration of that time, by institution of an action by any person, at any time within four years, for the joint use of himself and the educational fund of the county.

104.    Players from the state of Georgia lost money to Defendants as a result of Defendants' being the winners from their illegal gambling activities. Players paid "gambling

consideration" to Defendants in the form of $.75 bets for the chance to win merchandise at reduced prices.

105.    Defendants are the winners of all failed chances to win, since they retain the revenue from all failed bids.

106.    Defendants' "auctions" are illegal gambling contracts supported by gambling consideration within the meaning of the term "gambling consideration" as used in Code § 13-8-3(b). The terms of the illegal gambling contract are that, in exchange for mutual consideration, $.075 from the player — promise of a prize from Defendants, the player and Defendants stipulate that with each bid (bet), they shall gain or lose based upon the outcome of a future contingent event (chance). The outcome, that the parties agree determines the winner and loser, is whether another player places a subsequent bid. If another player places a subsequent bid, the player loses and Defendants are the winners of that bet or wager. If no other player places a bid, the Defendants lose and must produce the prize to the player. With each bid, either the player or Defendants are certain to lose. With each bid (bet) the gambling consideration "hangs in the balance". With each bid, "each party has a chance of gain and takes a risk of loss."

107.    Defendants maintain accurate computer records of all of their winnings and the names, addresses and amount of losses of all players is easily ascertainable through discovery. The statute does not require the Plaintiff to plead in the complaint the names of the losers or the amount of their loses. This information is easily ascertainable through discovery and can easily be proven at trial.

108.    The legislative purpose for Code § 13-8-3(b) is to deter gambling by depriving the gambling establishments of their winnings. By this lawsuit, Plaintiff Susan Snyder seeks to fulfill that legislative purpose and to provide a benefit to the state and a worthwhile charity.

109.     Players of Defendants internet auctions lost money from the time that Defendants first began conducting their internet auctions with United State citizens to the present.

110.     Plaintiff seeks recovery for the time period six years prior to the filing of this lawsuit, or from the time period when Defendants first began conducting their internet auctions with United State citizens, whichever is earlier; up to and including six months prior to the final judgment, final settlement or final appeal of this lawsuit.

**Georgia Gambling Laws**

111.     It is illegal to set up, operate or promote any lottery or policy game. It is illegal to own or operate any gambling device. It is illegal to bet and take bets or participate in the earnings of a gambling place. It is illegal to maintain gambling books and records and it is illegal to transmit gambling information. It is also illegal to possess any money, which has been received in the course of a bet or wager. Georgia Code § 16-12-20 through Code § 16-12-28.

112.     Defendants violated all of these laws because they charge money to players for the chance to win things of value and they allow a player to make a wager upon the result of a game or contest.

113.      Defendants charge an entry fee and a bidding fee for each chance to win a prize. This is an express violation of Georgia Code § 16-12-20 through Code § 16-12-28.

114.     Every bid is a bet or wager between the Defendant and the player upon the result of a game or contest of whether another player will bid before time runs out. This is an express violation of Georgia Code § 16-12-20 through Code § 16-12-28.

### Illegal Gambling Activities

115.    Plaintiff and her beneficiaries are entitled to recover money losses from

Defendants because Defendants engaged in illegal gambling activities in violations of Georgia

Code § 16-12-20 through Code § 16-12-28 as follows:

**Code § 16-12-20 (1)** "**Bet**" means an agreement that, dependent upon chance even

though accompanied by some skill, one stands to win or lose something of value.

116.    As described above, both the player and Defendants engage in "betting" because,

by agreement they stand to win or lose something of value dependent upon the chance of

whether another player bids before time runs out.

**Code § 16-12-20 (2)** "**Gambling device**" means:

(A) Any contrivance which for a consideration affords the player an opportunity to obtain

money or other thing of value, the award of which is determined by chance even though

accompanied by some skill, whether or not the prize is automatically paid by contrivance;

(B) Any slot machine or any simulation or variation thereof.

117.    Players pay $.75 consideration to Defendants for an opportunity to obtain

discounted merchandise, the award of which is determined upon the chance of whether another

player bids. The gambling devices, contrivances, slot machines or variations thereof, are

Defendants websites, which afford the player an opportunity to pay $.75 consideration for the

chance to obtain discounted merchandise.

**Code § 16-12-20 (4)** "**Lottery**" means any scheme or procedure whereby one or more

prizes are distributed by chance among persons who have paid or promised consideration for a

chance to win such prize, whether such scheme or procedure is called a pool, lottery, raffle, gift,

gift enterprise, sale, policy game, or by some other name.

26

118.    Defendants conduct illegal lotteries because they distribute prizes by chance to player that have paid consideration for the chance to win such prizes.

**Code § 16-12-21:**

(a) A person commits the **offense of gambling** when he:

(1) Makes a bet upon the partial or final result of any game or contest or upon the performance of any participant in such game or contest;

119.    Defendants commit the offense of gambling because, with each bid, they are making a bet on the results of a contest of whether another player bids before time runs out. Defendants take the other side of the players bet that he or she will win the prize.

**Code § 16-12-21:**

(a) A person commits the **offense of commercial gambling** when he intentionally does any of the following acts:

(1) Operates or participates in the earnings of a gambling place;

(2) Receives, records, or forwards a bet or offer to bet;

(3) For gain, becomes a custodian of anything of value bet or offered to be bet;

(6) Sets up or promotes any lottery, sells or offers to sell, or knowingly possesses for transfer or transfers any card, stub, ticket, check, or other device designed to serve as evidence of participation in any lottery.

120.    Defendants violate Code § 16-12-21 because they operate and participate in the earnings of a gambling place, they receive, record and forward bets, they are the custodians of the value of the bets and they set up and promote lotteries and they operate internet websites devices designed to serve as evidence of participation in their lotteries.

27

121.    Defendants knowingly violated all of the above Georgia criminal statutes against gambling. Defendants engaged in gambling, possessed and operated gambling devices, engaged in bookmaking, conducted illegal lotteries or policy, promoted gambling and possessed gambling records in violation of Georgia criminal statutes.

122.    Pursuant to Code § 13-8-3(b), Defendants are the winners of all failed bids, lotteries, bets or wagers and are liable to Plaintiff and her beneficiaries for all of the losses incurred by players on their website. Defendants' "auctions" are illegal gambling contracts supported by gambling consideration within the meaning of the term "gambling consideration" as used in Code § 13-8-3(b).

### PRAYER FOR RELIEF — SUSAN SNYDER AND FULTON COUNTY GEORGIA

WHEREFORE, Plaintiff Susan Snyder, individually and for the benefit of the education fund of Fulton County Georgia, prays that the Court enter an order and judgment in their favor and against Defendants as follows:

(o) Declaring Defendants guilty of illegal gambling;

(p) Declaring that Plaintiff and her beneficiaries are entitled to recover the losses of players from Defendants' Internet websites pursuant to Code § 13-8-3(b);

(q) Awarding actual damages to Plaintiff and her beneficiaries in the amount of the losses of all players from Defendants' Internet website in an amount to be determined at trial;

(r) Award triple the amount of damages determined by the Court or Jury for the losses;

(s) Awarding Plaintiff and her beneficiaries reasonable costs and attorneys' fees;

(t) Awarding Plaintiff and her beneficiaries pre- and post-judgment interest; and

Granting such other and further relief as the Court deems equitable and just.

## COUNT IV — VIOLATION OF OHIO LAW — DIANE ELLIOTT

123.    Plaintiffs incorporate the foregoing allegations as fully set forth herein.

124.    Plaintiff Diane Elliott seeks recovery, individually and for the benefit of the state of Ohio General Fund and Cancer for College, from Defendants, for gambling losses of players pursuant to Ohio Revised Code § 3763.04.

125.    Ohio Revised code § 3763.02. Money lost at games may be recovered:  If a person, by playing a game, or by a wager, loses to another, money or other thing of value, and pays or delivers it or a part thereof, to the winner thereof, such person losing and paying or delivering, within six months after such loss and payment or delivery, may sue for and recover such money or thing of value or part thereof, from the winner thereof, with costs of suit.

126.    Ohio Revised Code § 3763.04 provides that if a person losing money or thing of value, as provided in section 3763.02 of the Revised Code, within the time therein specified, and without collusion or deceit, does not sue, and effectively prosecute, for such money or thing of value, any person may sue for and recover it, with costs of suit, against such winner, for the use of such person prosecuting such suit.

127.    Players from the state of Ohio lost money to Defendants as a result of Defendants' illegal gambling activities.

128.    Defendants are the winners of all failed chances to win on their website, since they retain the revenue from all failed bids.

129.    Defendants' "auctions" fall within the purviews of Ohio Revised code § 3763.02 regarding "money lost at games or by wager may be recovered", because the players lost money to Defendants by playing a game or by wager. The wager between Defendants and the player is that if no one else bids the player wins, if someone else bids, Defendants wins. A losing wager of $.75 is paid directly to Defendants and the Defendant is the winner of the wager.

130. Defendants' "auctions" are illegal gambling contracts (illegal wagers) supported by "gambling consideration" within the meaning of Ohio Revised code § 3763.02. The terms of the illegal gambling contract are that, in exchange for mutual consideration, $.075 from the player — promise of a prize from Defendants, the player and Defendants stipulate that with each bid (bet), they shall gain or lose based upon the outcome of a future contingent event (chance). The outcome, that the parties agree determines the winner and loser, is whether another player places a subsequent bid. If another player places a subsequent bid, the player loses and Defendants are the winners of that bet or wager. If no other player places a bid, the Defendants lose and must produce the prize to the player. With each bid, either the player or Defendants are certain to lose. With each bid (bet) the gambling consideration "hangs in the balance". With each bid, each party has a chance of gain and takes a risk of loss.

131. Defendants maintain accurate computer records of all of their winnings and the names, addresses and amount of losses of all players is easily ascertainable through discovery. The statute does not require the Plaintiff to plead in the complaint the names of the losers or the amount of their loses. This information is easily ascertainable through discovery and can easily be proven at trial.

132. The legislative purpose for Ohio Revised Code § 3763.04 is to deter gambling by depriving the gambling establishments of their winnings. By this lawsuit, Plaintiff seeks to fulfill that legislative purpose and to provide a benefit to the state and a worthwhile charity.

133. Players of Defendants internet auctions lost money from the time that Defendants first began conducting their internet auctions with United State citizens to the present.

134. Plaintiff seeks recovery for the time period six years prior to the filing of this lawsuit, or from the time period when Defendants first began conducting their internet auctions

with United State citizens, whichever is earlier; up to and including six months prior to the final

judgment, final settlement or final appeal of this lawsuit.

### Ohio Gambling Laws

135.     It is illegal to set up, operate or promote any lottery or policy game. It is illegal to

engage in bookmaking. It is illegal to take bets or wagers. It is illegal to own or operate any

gambling device. It is illegal to maintain gambling books and records and it is illegal to transmit

gambling information. Bookmaking is illegal. It is also illegal to possess any money, which has

been received in the course of a bet or wager. Ohio Code § 2915 et. seq.

136.     Defendants violated all of these laws because they charge money to players for

the chance to win things of value and they allow a player to make a wager upon the result of a

game or contest.

137.     Defendants charge an entry fee and a bidding fee for each chance to win a prize.

This is an express violation of Ohio Code § 2915.02.

138.     Each bid is a bet or wager upon the result of a game or contest of whether another

player will bid before time runs out. This is an express violation of Ohio Code § 2915.02.

### Illegal Gambling Activities

139.     Plaintiff and her beneficiaries are entitled to recover money losses from

Defendants because Defendants engaged in illegal gambling activities in violations of Ohio Code

§ 2915 et. seq.as follows:

§ 2915.01 Definitions.

As used in this chapter:

(A)"Bookmaking" means the business of receiving or paying off bets.

(B)"Bet" means the hazarding of anything of value upon the result of an event, undertaking, or contingency, but does not include a bona fide business risk.

(C)"Scheme of chance" means a slot machine, lottery, numbers game, pool conducted for profit, or other scheme in which a participant gives a valuable consideration for a chance to win a prize, but does not include bingo, a skill-based amusement machine, or a pool not conducted for profit.

(D) "Game of chance" means poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance, but does not include bingo.

(E)"Game of chance conducted for profit" means any game of chance designed to produce income for the person who conducts or operates the game of chance, but does not include bingo.

(F)"Gambling device" means any of the following:

(1) A book, totalizer, or other equipment for recording bets; (2) A ticket, token, or other device representing a chance, share, or interest in a scheme of chance or evidencing a bet; (3) A deck of cards, dice, gaming table, roulette wheel, slot machine, or other apparatus designed for use in connection with a game of chance; (4) Any equipment, device, apparatus, or paraphernalia specially designed for gambling purposes.

(G)"Gambling offense" means any of the following:

(1) A violation of section 2915.02, 2915.03, 2915.04, 2915.05, 2915.06, 2915.07, 2915.08, 2915.081, 2915.082, 2915.09, 2915.091, 2915.092, 2915.10, or 2915.11 of the Revised Code; (2) A violation of an existing or former municipal ordinance or law of this or any other state or the United States substantially equivalent to any section listed in division (G)(1) of this

section or a violation of section 2915.06 of the Revised Code as it existed prior to July 1, 1996; (3) An offense under an existing or former municipal ordinance or law of this or any other state or the United States, of which gambling is an element; (4) A conspiracy or attempt to commit, or complicity in committing, any offense under division (G)(1), (2), or (3) of this section.

(VV)(1) "Slot machine" means either of the following:

(a) Any mechanical, electronic, video, or digital device that is capable of accepting anything of value, directly or indirectly, from or on behalf of a player who gives the thing of value in the hope of gain; (b) Any mechanical, electronic, video, or digital device that is capable of accepting anything of value, directly or indirectly, from or on behalf of a player to conduct or dispense bingo or a scheme or game of chance.

§ 2915.02 Gambling.

(A) No person shall do any of the following:

(1) Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking;

(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any game of chance conducted for profit or any scheme of chance;

(3) Knowingly procure, transmit, exchange, or engage in conduct that facilitates the procurement, transmission, or exchange of information for use in establishing odds or determining winners in connection with bookmaking or with any game of chance conducted for profit or any scheme of chance;

(4) Engage in betting or in playing any scheme or game of chance as a substantial source of income or livelihood;

(5) With purpose to violate division (A)(1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gambling device.

(B) For purposes of division (A)(1) of this section, a person facilitates bookmaking if the person in any way knowingly aids an illegal bookmaking operation, including, without limitation, placing a bet with a person engaged in or facilitating illegal bookmaking. For purposes of division (A)(2) of this section, a person facilitates a game of chance conducted for profit or a scheme of chance if the person in any way knowingly aids in the conduct or operation of any such game or scheme, including, without limitation, playing any such game or scheme.

140.    Defendants knowingly violated all of the above Ohio criminal statutes against gambling. Defendants engaged in gambling, possessed and operated gambling devices, engaged in bookmaking, conducted illegal lotteries or policy, promoted gambling and possessed gambling records in violation of Ohio criminal statutes.

141.    Pursuant to Ohio Revised Code § 3763.04, Defendants are the winners of all failed bets or wagers and are liable to Plaintiff and her beneficiaries for all of the losses incurred by players on their website.

## PRAYER FOR RELIEF — DIANE ELLIOTT AND HER BENEFICIARIES

WHEREFORE, Plaintiff Diane Elliott, individually and for the benefit of the state of Ohio General Fund and Cancer for College, prays that the Court enter an order and judgment in their favor and against Defendants as follows:

(u) Declaring Defendants guilty of illegal gambling;

(v) Declaring that Plaintiff and her beneficiaries are entitled to recover the losses of players from Defendants' Internet websites pursuant to Ohio Revised Code § 3763.04;

34

(w) Awarding actual damages to Plaintiff and her beneficiaries in the amount of the losses of all players from Defendants' Internet website in an amount to be determined at trial;

(x) Award triple the amount of damages determined by the Court or Jury for the losses;

(y) Awarding Plaintiff and her beneficiaries reasonable costs and attorneys' fees;

(z) Awarding Plaintiff and her beneficiaries pre- and post-judgment interest; and

Granting such other and further relief as the Court deems equitable and just.

## COUNT V — VIOLATION OF NEW JERSEY LAW — DIANE ELLIOTT

142. Plaintiffs incorporate the foregoing allegations as fully set forth herein.

143. Plaintiff Diane Elliott seeks recovery, individually and for the benefit of State of New Jersey General Fund and the Cancer for College, from Defendants for gambling losses of players pursuant to the losers' right to sue for the same.

144. N.J. Stat. Ann. § 2A:40-5 provide: Action by loser to recover money or property lost at gaming, with costs; provides: "If any person shall lose any money, goods, chattels or other valuable thing, in violation of section 2A:40-1 of this title, and shall pay or deliver the same or any part thereof to the winner, or to any person to his use, or to a stakeholder, such person may sue for and recover such money, or the value of such goods, chattels, or other valuable thing, from such winner, or from such depositary, or from such stakeholder, whether the same has been delivered or paid over by such stakeholder or not, in a civil action provided such action is brought within 6 calendar months after payment or delivery."

145. N.J. Stat. Ann. § 2A:40-6 provides that: "If the person who shall lose and pay such money, or lose and deliver such thing or things as aforesaid, shall not, within the time aforesaid, without collusion, sue for the money or other thing or things so lost and paid, or

delivered, any other person may sue for and recover the same, with costs of suit, from such winner, depositary or stakeholder as aforesaid; the one moiety thereof to the use of the person suing for the same, and the other moiety to the use of the state; provided the action is instituted within 6 calendar months from and after the expiration of the time limited in section 2A:40-5 of this title for the loser to sue for the same." N.J. Stat. Ann. § 2A:40-6.

146.    Players from the state of New Jersey lost money to Defendants as a result of Defendants' winnings from their illegal gambling activities.

147.    Defendants are the winners of all failed chances to win on their website, since they retain the revenue from all failed bids.

148.    Plaintiff has a right to recover from Defendants' because Defendants "auctions" fall within the purviews of N.J. Stat. Ann. § 2A:40-6. Defendants are the "winner, depositary or stakeholder", of money lost by a "wagers, bets or stakes made to depend upon any [ ] game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event"…

149.    Players lost money to Defendants as a result of bets or wagers between the parties. The wager between Defendants and the player is that if no one else bids, the player wins, if someone else bids, Defendants wins. A losing wager of $.75 is paid directly to Defendants and the Defendant is the winner of the wager.

150.    Defendants maintain accurate computer records of all of their winnings and the names, addresses and amount of losses of all players is easily ascertainable through discovery. The statute does not require the Plaintiff to plead in the complaint the names of the losers or the amount of their loses. This information is easily ascertainable through discovery and can easily be proven at trial.

151.    N.J. Stat. Ann. § 2A:40-6 is titled: "Informer Action to Recover Money or Property Lost At Gaming". The legislative purpose for is to deter gambling by depriving the gambling establishments of their winnings. By this lawsuit, Plaintiff seeks to fulfill that legislative purpose and to provide a benefit to the state and a worthwhile charity. In the alternative, Plaintiff seeks recovery under N.J. Stat. Ann. § 2A:40-8 which pertains specifically to recovery for lotteries.

152.    The legislative purpose of N.J. Stat. Ann. § 2A:40-6 is to deter gambling by depriving the gambling establishments of their winnings. By this lawsuit, Plaintiff Diane Elliott seeks to fulfill that legislative purpose and to provide a benefit to the state and a worthwhile charity.

153.    Players of Defendants internet auctions lost money from the time that Defendants first began conducting their internet auctions with United State citizens to the present.

154.    Plaintiff seeks recovery for the time period six years prior to the filing of this lawsuit, or from the time period when Defendants first began conducting their internet auctions with United State citizens, whichever is earlier; up to and including six months prior to the final judgment, final settlement or final appeal of this lawsuit.

### New Jersey Gambling Laws

155.    Defendants' "auctions" violate N.J. Stat. Ann. § 2A:40-1: "Gaming transactions unlawful:" All wagers, bets or stakes made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event, shall be unlawful.

156.    It is illegal to set up, operate or promote any lottery or policy game. It is illegal to own or operate any gambling device. It is illegal to maintain gambling books and records and it

is illegal to transmit gambling information. It is illegal to engage in bookmaking. It is illegal to possess any money, which has been received in the course of a bet or wager. All wagers, bets or stakes made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event, shall be unlawful. N.J. Stat. Ann. § 2A:40-1 as defined by N.J. Stat. Ann. § 2C:37 et. seq.

157. Defendants violated all of these laws because they bet or wager with players upon the result of a game or contest based on chance, or unknown or contingent event. This is an express violation of N.J. Stat. Ann. § 2A:40-1 and N.J. Stat. Ann. § 2C:37 et. seq.

158. Every bid is a bet or wager upon the result of a game or contest of whether another player will bid before time runs out. This is an express violation of N.J. Stat. Ann. § 2A:40-1 and N.J. Stat. Ann. § 2C:37 et. seq.

159. Defendants' "auctions" are illegal gambling contracts (illegal wagers) supported by "gambling consideration." The terms of the illegal gambling contract are that, in exchange for mutual consideration, $.075 from the player — promise of a prize from Defendants, the player and Defendants stipulate that with each bid (bet), they shall gain or lose based upon the outcome of a future contingent event (chance). The outcome, that the parties agree determines the winner and loser, is whether another player places a subsequent bid. If another player places a subsequent bid, the player loses and Defendants are the winners of that bet or wager. If no other player places a bid, the Defendants lose and must produce the prize to the player. With each bid, either the player or Defendants are certain to lose. With each bid (bet) the gambling consideration "hangs in the balance". With each bid, each party has a chance of gain and takes a risk of loss.

**Illegal Gambling Activities**

160.    Plaintiff and her beneficiaries are entitled to recover money losses from

Defendants because Defendants engaged in illegal gambling activities in violations of N.J. Stat.

Ann. § 2A:40-1 and N.J. Stat. Ann. § 2C:37 et. seq. as follows:

N.J. Stat. Ann. § 2A:40-1: Gaming Transactions Unlawful:

All wagers, bets or stakes made to depend upon any race or game, or upon any gaming by

lot or chance, or upon any lot, chance, casualty or unknown or contingent event, shall be

unlawful.

N.J. Stat. Ann. § 2C:37-1: Definitions:

a. "Contest of chance" means any contest, game, pool, gaming scheme or gaming device

in which the outcome depends in a material degree upon an element of chance, notwithstanding

that skill of the contestants or some other persons may also be a factor therein.

b. "Gambling" means staking or risking something of value upon the outcome of a

contest of chance or a future contingent event not under the actor's control or influence, upon an

agreement or understanding that he will receive something of value in the event of a certain

outcome.

c. "Player" means a person who engages in any form of gambling solely as a contestant

or bettor, without receiving or becoming entitled to receive any profit therefrom other than

personal gambling winnings, and without otherwise rendering any material assistance to the

establishment, conduct or operation of the particular gambling activity. g. "Bookmaking" means

advancing gambling activity by unlawfully accepting bets from members of the public upon the

outcome of future contingent events as a business.

h. "Lottery" means an unlawful gambling scheme in which (a) the players pay or agree to pay something of value for chances, represented and differentiated by numbers or by combinations of numbers or by some other media, one or more of which chances are to be designated the winning ones; and (b) the winning chances are to be determined by a drawing or by some other method based upon the element of chance; and (c) the holders of the winning chances are to receive something of value.

i. "Policy" or "the numbers game" means a form of lottery in which the winning chances or plays are not determined upon the basis of a drawing or other act on the part of persons conducting or connected with the scheme, but upon the basis of the outcome or outcomes of a future contingent event or events otherwise unrelated to the particular scheme.

N.J. Stat. Ann. § 2C:37-2. Promoting Gambling:

a. Promoting Gambling Defined. A person is guilty of promoting gambling when he knowingly:

(1) Accepts or receives money or other property, pursuant to an agreement or understanding with any person whereby he participates or will participate in the proceeds of gambling activity.

161. Defendants knowingly violated all of the above New Jersey criminal statutes against gambling. Defendants engaged in gambling, possessed and operated gambling devices, engaged in bookmaking, conducted illegal lotteries or policy, promoted gambling and possessed gambling records in violation of New Jersey criminal statutes.

162. Pursuant to N.J. Stat. Ann. § 2A:40-6, Defendants are liable to Plaintiff and her beneficiaries for all of the losses incurred by players as a result of Defendants illegal gambling winnings.

**PRAYER FOR RELIEF — DIANE ELLIOTT AND BENEFICIARIES**

WHEREFORE, Plaintiff Diane Elliott, individually and for the benefit of State of New Jersey General Fund and Cancer for College, prays that the Court enter an order and judgment in their favor and against Defendants as follows:

(aa)   Declaring Defendants guilty of illegal gambling;

(bb)   Declaring that Plaintiff and her beneficiaries are entitled to recover the losses of players from Defendants' Internet websites pursuant to N.J. Stat. Ann. § 2A:40-6;

(cc)   Awarding actual damages to Plaintiff and her beneficiaries in the amount of the losses of all players from Defendants' Internet website in an amount to be determined at trial;

(dd)   Award triple the amount of damages determined by the Court or Jury for the losses;

(ee)   Awarding Plaintiff and her beneficiaries reasonable costs and attorneys' fees;

(ff)   Awarding Plaintiff and her beneficiaries pre- and post-judgment interest; and Granting such other and further relief as the Court deems equitable and just.

**COUNT VI — VIOLATION OF SOUTH CAROLINA LAW — ALL PLAINTIFFS**

163.   Plaintiffs incorporate the foregoing allegations as fully set forth herein.

164.   Plaintiffs seek recovery, individually and for the benefit of the state of South Carolina General Fund, from Defendants, for gambling losses of players pursuant to S.C. Code Ann. § 32-1-20 and S.C. Code Ann. § 16-19-20.

165.   South Carolina Statute Section 32-1-10 provides:  Any person who shall at any time or sitting, by playing at cards, dice table or any other game whatsoever or by betting on the sides or hands of such as do play at any of the games aforesaid, lose to any person or persons so

playing or betting, in the whole, the sum or value of fifty dollars and shall pay or deliver such sum or value or any part thereof shall be at liberty, within three months then next ensuing, to sue for and recover the money or goods so lost and paid or delivered or any part thereof from the respective winner or winners thereof, with costs of suit, by action to be prosecuted in any court of competent jurisdiction.

166.    S.C. Code Ann. § 32-1-20 provides:  In case any person who shall lose such money or other thing as aforesaid shall not, within the time aforesaid, really and bona fide and without covin or collusion sue and with effect prosecute for the money or other things so by him or them lost and paid and delivered as aforesaid, it shall be lawful for any other person, by any such action or suit as aforesaid, to sue for and recover the same and treble the value thereof, with costs of suit, against such winner or winners as aforesaid, the one moiety thereof to the use of the person that will sue for the same and the other moiety to the use of the county in which the offense shall have been committed.

167.    The legislative purpose of these statutes is to deter gambling by depriving the gambling establishments of their winnings. By this lawsuit, Plaintiffs seek to fulfill that legislative purpose and to provide a benefit to the state of South Carolina.

168.    Players from the state of South Carolina lost money to Defendants as a result of Defendants' winnings from their illegal gambling activities. The sum of value is greater than fifty dollars.

169.    Defendants are the winners of all failed bets, (chances to win) on their website, since they retain the revenue from all failed bids.

170.    Plaintiffs have a right to recover from Defendants because Defendants "auctions" fall within the purviews of South Carolina Statute Section 32-1-10. Players on Defendants

website, played a game of chance (or any other game whatsoever), they lost money to persons so playing or betting (Defendants), the value is more than fifty dollars and three months have passed since the gambling occurred

171. Plaintiffs also have a right to recover from Defendants under S.C. Code Ann. § 16-19-20 because Defendants conduct illegal lotteries. S.C. Code Ann. § 16-19-20 provides that: "Whoever shall be adventurer in or shall pay any moneys or other consideration or shall in any way contribute unto or upon account of any sales or lotteries shall forfeit for every such offense the sum of one hundred dollars to be recovered with costs of suit, by action or indictment in any court of competent jurisdiction in this State, one moiety thereof to and for the use of the State and the other moiety thereof to the person who shall inform and sue for the same."

172. Players lost money to Defendants as a result of bets or wagers between the parties. The wager is that if no one else bids, the player wins, if someone else bids, Defendants wins. A losing wager of $.75 is paid directly to Defendants and the Defendant is the winner of the wager.

173. Defendants' "auctions" are illegal gambling contracts (illegal wagers) supported by "gambling consideration." The terms of the illegal gambling contract are that, in exchange for mutual consideration, $.075 from the player — promise of a prize from Defendants, the player and Defendants stipulate that with each bid (bet), they shall gain or lose based upon the outcome of a future contingent event (chance). The outcome, that the parties agree determines the winner and loser, is whether another player places a subsequent bid. If another player places a subsequent bid, the player loses and Defendants are the winners of that bet or wager. If no other player places a bid, the Defendants lose and must produce the prize to the player. With each bid, either the player or Defendants are certain to lose. With each bid (bet) the gambling

43

consideration "hangs in the balance". With each bid, each party has a chance of gain and takes a risk of loss.

174.    Defendants maintain accurate computer records of all of their winnings and the names, addresses and amount of losses of all players is easily ascertainable through discovery. The statute does not require the Plaintiff to plead in the complaint the names of the losers or the amount of their loses. This information is easily ascertainable through discovery and can easily be proven at trial. Furthermore, S.C. Code Ann. § 32-1-30 provides for the right to discovering the sum of money won at play.

175.    Players of Defendants internet auctions lost money from the time that Defendants first began conducting their internet auctions with United State citizens to the present.

176.    Plaintiffs seek recovery for the time period six years prior to the filing of this lawsuit, or from the time period when Defendants first began conducting their internet auctions with United State citizens, whichever is earlier; up to and including six months prior to the final judgment, final settlement or final appeal of this lawsuit.

### South Carolina Gambling Laws

177.    Defendants' "auctions" violate S.C. Code Ann. § 16-19 et seq. It is illegal to set up, operate or promote any lottery or policy game. It is illegal to own or operate any gambling device. It is illegal to maintain gambling books and records and it is illegal to transmit gambling information. It is illegal to engage in bookmaking. It is illegal to possess any money, which has been received in the course of a bet or wager. It is illegal to engage in betting, record or register bets, pool selling or bookmaking, with or without writing, at any time or place.

178.    Defendants violated these laws because they conduct lotteries and/or bet or wager with players upon the result of a game or contest based on chance, or unknown or contingent

event. These are express violations of S.C. Code Ann. § 16-19-10 and S.C. Code Ann. § 16-19-130.

179.    Defendants knowingly violated all of the above South Carolina criminal statutes against gambling. Defendants engaged in gambling, possessed and operated gambling devices, engaged in bookmaking, conducted illegal lotteries or policy, promoted gambling and possessed gambling records in violation of South Carolina criminal statutes.

180.    Plaintiffs and their beneficiary are entitled to recover money losses from Defendants because Defendants engaged in illegal gambling activities in violations of S.C. Code Ann. § 16-19-10 and S.C. Code Ann. § 16-19-130.

181.    Pursuant to S.C. Code Ann. § 16-19-20 and S.C. Code Ann. § 32-1-20, Defendants are liable to Plaintiffs and their beneficiary for all of the losses incurred by players as a result of Defendants illegal gambling winnings.

**PRAYER FOR RELIEF — PLAINTIFFS AND BENEFICIARY**

WHEREFORE, Plaintiffs, individually and for the benefit of State of South Carolina General Fund, prays that the Court enter an order and judgment in their favor and against Defendants as follows:

(gg)    Declaring Defendants guilty of illegal gambling;

(hh)    Declaring that Plaintiffs and their beneficiary are entitled to recover the losses of players from Defendants' Internet websites pursuant to S.C. Code Ann. § 16-19-20 and S.C. Code Ann. § 32-1-20;

(ii)    Awarding actual damages to Plaintiffs and their beneficiary in the amount of the losses of all players from Defendants' Internet website in an amount to be determined at trial;

(jj) Award triple the amount of damages determined by the Court or Jury for the losses;

(kk)     Awarding Plaintiffs and their beneficiary reasonable costs and attorneys' fees;

(ll)     Awarding Plaintiffs and their beneficiary pre- and post-judgment interest; and

Granting such other and further relief as the Court deems equitable and just.

## COUNT VII — VIOLATION OF KENTUCKY LAW — ALL PLAINTIFFS

182.     Plaintiffs incorporate the foregoing allegations as fully set forth herein.

183.     Plaintiffs seek recovery, individually and for the benefit of the Cancer for College and the State of Kentucky, from Defendants, for gambling losses of players pursuant to Kentucky Rev. Stat. § 372.040.  Plaintiffs pledge on this claim 1/8 of any recovery to Cancer for College and 1/8 to the State of Kentucky General Fund.

184.     Kentucky Rev. Stat. § 372.040 provides:  "If the loser or his creditor does not, within six (6) months after its payment or delivery to the winner, sue for the money or thing lost, and prosecute the suit to recovery with due diligence, any other person may sue the winner, and recover treble the value of the money or thing lost, if suit is brought within five (5) years from the delivery or payment."

185.     The legislative purpose of this statute is to deter gambling by depriving the gambling establishments of their winnings. By this lawsuit, Plaintiffs seek to fulfill that legislative purpose and to provide a benefit to the state of Kentucky.

186.     Players from the state of Kentucky lost money to Defendants as a result of Defendants' winnings from their illegal gambling activities. The sum of value is greater than five dollars.

187.     Defendants are the winners of all failed bets, (chances to win) on their website, since they retain the revenue from all failed bids.

188.     Plaintiffs have a right to recover from Defendants because Defendants "auctions" fall within the purviews of Kentucky Rev. Stat. § 372.040. Players on Defendants website sustained gambling losses to Defendants who the winners of those gambling losses.

189.     Players lost money to Defendants as a result of bets or wagers between the parties. The wager is that if no one else bids, the player wins, if someone else bids, Defendants wins. A losing wager of $.75 is paid directly to Defendants and the Defendant is the winner of the wager.

190.     Defendants' "auctions" are illegal gambling contracts (illegal wagers) supported by "gambling consideration." The terms of the illegal gambling contract are that, in exchange for mutual consideration, $.075 from the player — promise of a prize from Defendants, the player and Defendants stipulate that with each bid (bet), they shall gain or lose based upon the outcome of a future contingent event (chance). The outcome, that the parties agree determines the winner and loser, is whether another player places a subsequent bid. If another player places a subsequent bid, the player loses and Defendants are the winners of that bet or wager. If no other player places a bid, the Defendants lose and must produce the prize to the player. With each bid, either the player or Defendants are certain to lose. With each bid (bet) the gambling consideration "hangs in the balance". With each bid, each party has a chance of gain and takes a risk of loss.

191.     Defendants maintain accurate computer records of all of their winnings and the names, addresses and amount of losses of all players is easily ascertainable through discovery. The statute does not require the Plaintiff to plead in the complaint the names of the losers or the amount of their loses. This information is easily ascertainable through discovery and can easily be proven at trial.

192.     Players of Defendants internet auctions lost money from the time that Defendants first began conducting their internet auctions with United State citizens to the present.

193.     Plaintiffs seek recovery for the time period six years prior to the filing of this lawsuit, or from the time period when Defendants first began conducting their internet auctions with United State citizens, whichever is earlier; up to and including six months prior to the final judgment, final settlement or final appeal of this lawsuit.

**Kentucky Gambling Laws**

194.     Defendants' "auctions" violate Kentucky Rev. Stat. § 528 et seq. It is illegal to set up, operate or promote any lottery or mutual scheme and it is illegal to engage in bookmaking.

195.     Defendants violated these laws because they conduct lotteries and/or bet or wager with players upon the result of a game or contest based on chance, or unknown or contingent event. These are express violations of Ky. Rev. Stat. Ann. § 528.020 as defined by Ky. Rev. Stat. Ann. § 528.010.

196.     Defendants knowingly violated the above Kentucky criminal statutes against gambling. Defendants engaged in gambling, bookmaking and conducted illegal lotteries or mutual schemes and promoted gambling in violation of Kentucky criminal statutes.

197.     Plaintiffs and their beneficiary are entitled to recover money losses from Defendants because Defendants are the winners of players gambling losses.

198.     Pursuant to Kentucky Rev. Stat. § 372.040, Defendants are liable to Plaintiffs and their beneficiary for all of the losses incurred by players as a result of Defendants illegal gambling winnings.

**PRAYER FOR RELIEF — PLAINTIFFS AND BENEFICIARY**

WHEREFORE, Plaintiffs, individually and for the benefit of the American Heart Association, prays that the Court enter an order and judgment in their favor and against Defendants as follows:

(mm)   Declaring Defendants guilty of illegal gambling;

(nn)   Declaring that Plaintiffs and their beneficiary are entitled to recover the losses of players from Defendants' Internet websites pursuant to S.C. Code Ann. § 16-19-20 and S.C. Code Ann. § 32-1-20;

(oo)   Awarding actual damages to Plaintiffs and their beneficiary in the amount of the losses of all players from Defendants' Internet website in an amount to be determined at trial;

(pp)   Award triple the amount of damages determined by the Court or Jury for the losses;

(qq)   Awarding Plaintiffs and their beneficiary reasonable costs and attorneys' fees;

(rr)   Awarding Plaintiffs and their beneficiary pre- and post-judgment interest; and

Granting such other and further relief as the Court deems equitable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff requests trial by jury of all matters that can be so tried.

Dated: March 31, 2011.

Plaintiffs and their Beneficiaries,

By: _s/ William Houck_

William Houck

William Houck
Houck Law Firm, P.S.
4045 262nd Ave. SE
Issaquah, Washington 98028
(425) 392-7118
ADRC:   3122387
© Houck Law Firm, P.S.