# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 2203 | **DATE** | 3/30/2012 |
| **CASE TITLE** | Manning et al. vs. Creative Headquarters, LLC et al. | | |

**DOCKET ENTRY TEXT**

For the reasons provided herein, the Court grants defendant Vesuvius Technologies, LLC's ("Vesuvius") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [doc. no. 31]. Because the reasons for dismissal apply equally to all defendants, the Court hereby terminates this case. The Court strikes as moot Bidrivals, Inc. and Bidrivals, Ltd.'s motion to sever [doc. no. 41], Vesuvius' motion to compel arbitration [doc. no. 34], as well as any other pending motion.

■[ For further details see text below.]    Docketing to mail notices.

## STATEMENT

### Facts

Plaintiffs Jill Manning (a Massachusetts citizen), Theresa Bryant (an Illinois citizen), Susan Snyder (a Georgia citizen) and Diane Elliott (a Washington citizen) bring this putative class action *qui tam* lawsuit based on diversity jurisdiction[1] on behalf of others who have been losers of auctions at penny auction websites. Plaintiffs have sued penny auction website operators Creative Headquarters, LLC, Upbids.com LLC, Bidsauce, LLC, Vesuvius, Naxopresence UK Ltd., Bidrivals Ltd., Bidrivals Inc. and John Does 1-40 seeking recovery for gambling losses of others pursuant to Georgia, Illinois, Kentucky, Massachusetts, New Jersey, Ohio and South Carolina *qui tam* law. Ga. Code Ann. § 13-8-3; 720 Ill. Comp. Stat. 5/28-8(b); Ky. Rev. Stat. Ann. § 372.040; Mass. Gen. Laws ch. 137, § 1; N.J. Stat. Ann. 2A:40-6; Ohio Rev. Code Ann. § 3763.08; S.C. Code Ann. § 16-19-20.

Plaintiffs allege that the basic features of defendants' penny auctions are that defendants provide the merchandise and anyone who wants to bid at the penny auction must pay an entry fee and a bidding fee. (Compl. ¶ 23.) The entry fees are called "bid packs" and they range in price from $20.00 to $500.00. (*Id.*) The bidding fee is $.60 to $1.00 for each bid, depending on the defendant's rules. (*Id.*) Auctions for merchandise usually start at zero dollars. Each bid increases the price of the merchandise by a penny, hence the name. (*Id.*) Plaintiffs allege that the winner of the auction is the highest bidder before the bidding period expires and the last person to pay the bidding fee to defendant. (*Id.*; *see* Pls.' Mem. Opp'n Mot. Dismiss 1-2.) Both winners and losers pay bidding fees to defendant. (*Id.* (stating "All failed bids are revenue to Defendants."); Pls.' Mem. Opp'n Mot. Dismiss 1-2 ("[T]he winner . . . is the last player to pay $.65 to Defendant." )

**STATEMENT**

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Plaintiffs assert claims under the gambling *qui tam* statutes of Georgia, Illinois, Kentucky, Massachusetts, New Jersey, Ohio and South Carolina. Courts have long held that the *qui tam* statutes must be narrowly construed because they are penal in nature. *See Glick v. MTV Networks*, 796 F. Supp. 743, 745 (S.D.N.Y.1992) (New Jersey statute is quasi-penal); *Humphrey v. Viacom, Inc.*, No. 06-2768 (DMC), 2007 WL 1797648, at *4 (D.N.J. June 20, 2007) (New Jersey statute is penal and strictly construed); *Hartlieb v. Carr*, 94 F. Supp. 279, 281 (E.D. Ky. 1950) (Kentucky statute is penal); *Justice v. The Pantry*, 518 S.E.2d 40, 42 (S.C. 1999) (South Carolina statute is penal and strictly construed); *Donovan v. E. Racing Ass'n*, 86 N.E.2d 903, 904 (Mass. 1949) (Massachusetts statute is penal); *State v. Schwabie*, 84 N.E.2d 768, 770-71 (Ohio Ct. App. 1948) (Ohio statute is penal and strictly construed); *Kizer v. Walden*, 65 N.E. 116, 118 (Ill. 1902) (Illinois statute is penal).

Vesuvius argues that plaintiffs fail to state a claim that it violated any of the *qui tam* statutes because each statute requires that only the winner is the proper defendant and neither Vesuvius nor any other defendant meets the definition of "winner." *See* Ga. Code Ann. § 13-8-3; 720 Ill. Comp. Stat. 5/28-8(b); Ky. Rev. Stat. Ann. § 372.040; Mass. Gen. Laws ch. 137, § 1; N.J. Stat. Ann. 2A:40-6; Ohio Rev. Code Ann. § 3763.08; S.C. Code Ann. § 16-19-20.

In *Hardin v. NBC Universal, Inc.*, 660 S.E.2d 374 (Ga. 2008), viewers of a televised "Lucky Case Game" during the broadcast of "Deal or No Deal" sued the organizers/ sponsors of the game under Georgia Code Ann. § 13-8-3 to recover losses, *i.e.*, the texting fee, they paid to select their prediction of the winning briefcase. *Id.* at 374-75. Entrants who picked the correct case were entered into a random drawing and the winner of that drawing received a prize. *Id.* at 375. The Georgia Supreme Court held that because the losers' texting fees were certain to be lost and the texting fees (the contract's consideration) never hung in the balance as between plaintiffs and defendants, the organizer/sponsor could not be liable under § 13-8-3. *Id.* at 375-76.

In *Humphrey*, plaintiff brought a *qui tam* action against fantasy sports providers under District of Columbia, Georgia, Illinois, Kentucky, Massachusetts, New Jersey, Ohio and South Carolina law. 2007 WL 1797648, at *4. The court held that because the providers received entry fees regardless of the outcome of any league and do not bet on the side of any of the participants, they could not be winners subject to liability under any of the *qui tam* statutes. *Id.*

In *Reuter v. MasterCard International, Inc.*, a plaintiff brought a *qui tam* action against credit card companies and banks that charged finance companies a percentage of the funds forwarded to them on behalf of the cardholders purchasing credits that cardholders could then use to gamble on Internet gambling sites. 921 N.E.2d 1205, 1213 (Ill. App. Ct. 2010). The *Reuter* court held that the credit card companies and banks were not "winners" because defendants' charges were not affected by the outcome of the gambling. *Id.*

In another *qui tam* action, *Gillespie v. Schomaker*, 191 F. Supp. 8, 10 (E.D. Ky. 1961), where the

**STATEMENT**

plaintiff sued the owners of the premises on which gambling operations took place, the court held that because the owners of the premises had not risked and won money, they were not winners as defined by the Kentucky *qui tam* statute.

As in *Hardin*, *Humphrey*, *Reuter* and *Gillespie*, based on the facts alleged, defendants are not "winners" under the *qui tam* statutes. Plaintiffs in the instant case allege that the winner of the penny auction is the person who places the highest bid. (Compl. ¶ 23.) Plaintiffs allege and concede that defendants are paid entry and bidding fees from both the losers and winners. (*Id.*; *see* Pls.' Mem. Opp'n Mot. Dismiss 1-2.) Because all participants' entry and bidding fees are certain to be lost to Vesuvius and the other defendants, such fees never hang in the balance because at no point do the penny auction participants pay anything to defendants that is in any way dependent on the outcome of any auction. Defendants do not compete for the merchandise being auctioned. Absolutely nothing is undetermined or contingent about the participants' payment of fees to defendants, and thus, the participants do not "risk" losing their entry or bidding fees. Based on the facts as alleged, under Georgia, Illinois, Kentucky, Massachusetts, New Jersey, Ohio and South Carolina's *qui tam* statutes, Vesuvius is not a winner and neither are any of the other defendants. Plaintiffs simply have not provided any sufficiently analogous case law that would warrant the marked extension of the application of the *qui tam* statutes, which the Court construes narrowly, to the penny auctions alleged here.

The Court thus grants Vesuvius' motion to dismiss the complaint. Because the reasons for dismissal apply equally to all other defendants, the Court hereby dismisses the complaint in its entirety with prejudice.

---

1. Although jurisdiction is questioned, the Georgia, Illinois, Kentucky, Massachusetts, New Jersey, Ohio and South Carolina legislatures have created a case or controversy between plaintiffs and defendants by enacting the *qui tam* statutes at issue, which allow any person to recover a loser's gambling loss if the loser fails to make a claim against the winner within six months. *See, e.g., Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773-74 (2000) (holding that *qui tam* relator under False Claims Act has Article III standing). Because plaintiffs argue that their claims are cognizable based on an extension of the application of the *qui tam* statutes to the penny auction scenario, the Court holds that it has jurisdiction to determine whether plaintiffs state a claim under those statutes.